# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

KENTEX ASIA LIMITED,

    Plaintiffs/Counter-Defendant,

v.

ATT SOUTHERN INC.,

    Defendant/Counterclaimant.

1:17-cv-273

Hon. John E. Jones III

## **MEMORANDUM & ORDER**

### September 14, 2017

Presently before the Court are two pending motions. The first motion is Plaintiff Kentex Asia Limited's ("Kentex") Motion to Dismiss Defendant's Amended Counterclaims. (Doc. 21). Subsequent to Kentex's Motion, Defendant ATT Southern Inc. ("ATT") filed a Motion for Leave to File a Second Amended Answer, Affirmative Defenses, and Counterclaims. (Doc. 27). ATT proposes to allege two additional counterclaims but does not propose any changes to the counterclaims challenged in Kentex's Motion. For the reasons that follow, we shall deny Kentex's Motion and grant ATT's Motion.

## I. PROCEDURAL HISTORY

Kentex initiated this diversity action by filing of a Complaint on February 14, 2017. (Doc. 1). The Complaint alleges, in the alternative, breach of contract, quantum meruit, and unjust enrichment. ATT filed its Answer and Counterclaim

on April 10, 2017. (Doc.11). On May 22, 2017, ATT filed an Amended Answer and Counterclaims. (Doc. 18). ATT asserted six counts in its Amended Counterclaims, including four counts of breach of contract, false advertising under the Lanham Act,[1] and tortious interference with contractual relations. Kentex filed a Motion to Dismiss all of ATT's Amended Counterclaims, except for the Lanham Act claim, on June 19, 2017. (Doc. 21). Kentex's Motion has been fully briefed and is ripe for our review. (Docs. 22, 25, 26). While Kentex's Motion was pending, ATT filed its motion seeking to leave to file a Second Amended Answer and Counterclaims with the addition of new counterclaims. (Doc. 27). ATT's Motion also has been fully briefed and is ripe for our review. (Docs. 31, 32, 33).

We will dispose of both pending Motions in this Memorandum and Order. We will first outline the facts pertinent to both Motions and will then address Kentex's Motion followed by ATT's Motion.

## II. FACTUAL BACKGROUND

We draw facts from ATT's Amended Counterclaims and assume them to be true. This case involves agreements between ATT, Kentex, and Dongguan Sunland Technology Co., Ltd. ("Sunland") for the manufacture of custom planters using ATT's proprietary molds. ATT and Sunland entered a Manufacturing Agreement and an Agreement of Title and Ownership of Molds, Covenants of Confidentiality,

---

[1] 15 U.S.C. §1125(a)

2

and Release and Disclaimer ("Mold Agreement"). (Doc. 18, Am. Countercl. ¶¶ 7, 8). Sunland later instructed ATT to direct purchase orders, invoices, and payment to Kentex. (*Id.* at ¶ 9). Original shipping documents bore Kentex's name. (*Id.* at ¶ 10). The shipping documentation was later changed to show Sunland as shipper because Kentex did not meet overseas shipping regulations. (*Id.* at ¶ 11). Invoices also showed Sunland as shipper and Kentex as beneficiary of the purchase. (*Id.* at ¶ 12).

In early 2015, Kentex delivered planters directly to ATT's customers. (*Id.* at ¶ 32). Shortly after receiving the planters, several of ATT's customers complained to ATT of the planters' poor quality. (*Id.* at ¶ 33). As a result of the complaints, ATT was required to buy back more than $1.5 million in defective planters from its customers. (*Id.* at ¶ 38). ATT contacted Kentex to inform Kentex of the defective planters and demanded reimbursement for charge-backs pursuant to the Manufacturing Agreement. (*Id.* at ¶ 40). Kentex, in response, demanded immediate payment for amounts due. (*Id.* at ¶ 41). ATT did not pay Kentex, and Kentex instructed Sunland to refrain from producing any planters for ATT. (*Id.* at ¶ 44). The production stoppage forced ATT to source other manufacturers to fulfill ATT's obligations to its customers, which resulted in increased costs to ATT. (*Id.* at ¶¶ 45, 46). Thereafter, ATT ended its relationship with Kentex. (*Id.* at ¶ 47).

Kentex has not returned samples that belong to ATT. (*Id.* at ¶¶ 49, 50). In addition, Kentex has displayed products made using ATT's proprietary molds at trade shows. (*Id.* at ¶ 51).

## III. ANALYSIS

### 1. Kentex's Motion to Dismiss

#### A. Standard of Review

In considering a motion to dismiss pursuant to Rule 12(b)(6), courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings, Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)). In resolving a motion to dismiss pursuant to Rule 12(b)(6), a court generally should consider only the allegations in the complaint, as well as "documents that are attached to or submitted with the complaint,…and any matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case." *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006).

A Rule 12(b)(6) motion tests the sufficiency of the complaint against the pleading requirement of Rule 8(a). Rule 8(a)(2) requires that a complaint contain a short and plain statement of the claim showing that the pleader is entitled to relief,

"in order to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint attacked by Rule 12(b)(6) motion to dismiss need not contain detailed factual allegations, it must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a motion to dismiss, a civil plaintiff must allege facts that "raise a right to relief above the speculative level…." *Victaulic Co. v. Tieman*, 499 F.3d 227, 235 (3d Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). Accordingly, to satisfy the plausibility standard, the complaint must indicate that defendant's liability is more than "a sheer possibility." *Iqbal*, 556 U.S. at 678. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

Under the two-pronged approach articulated in *Twombly* and later formalized in *Iqbal*, a district court must first identify all factual allegations that constitute nothing more than "legal conclusions" or "naked assertions." *Twombly*, 550 U.S. at 555, 557. Such allegations are "not entitled to the assumption of truth" and must be disregarded for purposes of resolving a 12(b)(6) motion to dismiss. *Iqbal*, 556 U.S. at 679. Next, the district court must identify "the 'nub' of the …

complaint – the well-pleaded, nonconclusory factual allegation[s]." *Id.* Taking these allegations as true, the district judge must then determine whether the complaint states a plausible claim for relief. *See id.*

However, "a complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits." *Phillips,* 515 F.3d at 231 (citing *Twombly*, 550 U.S. at 556-57). Rule 8 "does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Id.* at 234.

### B. Discussion

ATT states six counterclaims against Kentex: four counts of breach of contract, false advertising under the Lanham Act, and tortious interference with contractual relations. Kentex moves to dismiss only the four counts of breach of contract and the claim for tortious interference with contractual relations. We begin with the breach of contract claims.

#### i. Breach of contract

ATT bases its breach of contract claims against Kentex on the Manufacturing Agreement and the Mold Agreement. Although both agreements were between ATT and Sunland, and Kentex was never a party to either agreement, ATT alleges that Kentex, as Sunland's agent, assumed the obligations

of both agreements. Under Pennsylvania law, an agent is not liable for the obligations of a disclosed principal unless the agent agrees to assume liability. *See Vernon D. Cox Co., Inc. v. Giles*, 406 A.2d 1107, 1110 (Pa. Super. Ct. 1979). ATT has alleged that purchase orders between Kentex and ATT incorporate the manufacturing and mold agreements and, thus, Kentex assumed Sunland's obligations under the agreements. (Doc. 18, Am. Countercl. ¶¶ 16-23). While we acknowledge that ATT's assumption argument is thin, the relationship between Kentex and Sunland is unclear at this early stage.[2] It appears that Kentex and Sunland could be interchangeable for invoicing purposes. (*Id.* at ¶ 12). To that end, it is plausible that Kentex would have, at some point, assumed the obligations of the agreements between Sunland and ATT. We therefore find that ATT has pled sufficient facts to state plausible claims for breach of contract.

### ii. Tortious interference with contractual relations

ATT claims that Kentex interfered with ATT's contractual relationship with Sunland when Kentex instructed Sunland to stop producing planters for ATT. Tortious interference with contractual relations occurs when one "intentionally and improperly interferes with the performance of a contract … between another and a third party by inducing or otherwise causing the third person not to perform the

---

[2] ATT's breach-of-contract claims survive this motion to dismiss by the thinnest of margins. On summary judgment, ATT will need to provide clearer evidence that Kentex assumed Sunland's contractual obligations.

contract…" *Binns v. Flaster Greenberg, P.C.*, 480 F.Supp.2d 773, 778 (E.D. Pa. 2007) (quoting *Adler, Barish, Daniels, Levin and Creskoff v. Epstein*, 482 Pa. 416, 431 (Pa. 1978)). To prove tortious interference with contractual relations, a plaintiff must satisfy four elements: (1) the existence of a contract; (2) purposeful action by defendant, with intent to harm the existing relation; (3) the absence of a privilege or justification; and (4) damage resulting from defendant's conduct. *Brokerage Concepts, Inc. v. U.S. Healthcare, Inc.*, 140 F.3d 494, 530 (3d Cir. 1998) (quoting (*Pelagatti v. Cohen*, 536 A.2d 1337, 1343 (Pa. Super. Ct. 1988)).

The contractual relationship between ATT and Sunland is clear from the contracts attached to ATT's counterclaims. (Ex. A & Ex. B to Am. Countercl.). The first element, therefore, is met. Regarding the second element, ATT alleges that Kentex instructed Sunland to stop producing planters, indicating purposeful conduct. The question, however, is whether Kentex's purpose was specifically intended to harm ATT. At this early stage, we find ATT's allegation of intentional harm sufficient. "It would be difficult for [ATT] to allege more facts related to [Kentex's] state of mind … without the benefit of discovery." *Cincinnati Ins. Co. v. Markey Builders, Inc.*, No. 1:15-cv-62, 2015 WL 4715249, at *4 (M.D. Pa. Aug. 7, 2015). We find that ATT's allegations raise a reasonable expectation that discovery may reveal evidence of intent to harm.

Kentex challenges the third element, as well, by suggesting that Kentex was privileged to mitigate its damages when ATT did not pay outstanding invoices. However, Kentex's argument presumes that ATT breached the terms of the purchase orders with Kentex. ATT has alleged that it was entitled to a set-off of its payment obligations based on the charge-backs ATT incurred in having to repurchase defective planters. (Doc. 18, Am. Countercl. ¶ 43). Assuming ATT's allegations to be true, it is plausible that ATT did not breach its contractual obligations to Kentex, and Kentex, therefore, was not privileged to direct Sunland to stop production. Accordingly, at this stage of the litigation, we find that ATT sufficiently pled facts to satisfy the third element. Finally, the fourth element is evident from the pleadings, as ATT has alleged that the production stoppage forced ATT to find another manufacturer at a higher cost to fulfill its obligations to its customers. Thus, we find that ATT satisfied the fourth element. Therefore, we find that ATT sufficiently stated a claim for tortious interference with contractual relations.

2. **ATT's Motion for Leave to Amend**

   A. **Standard of Review**

Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R.

Civ. P. 15(a)(2). "'If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claims on the merits.'" *Lorenz v. CSX Corp.*, 1 F.3d 1406, 1413 (3d Cir. 1993) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). "'[T]he grant or denial of an opportunity to amend is within the discretion of the District Court, but outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely an abuse of that discretion and inconsistent with the spirit of the Federal Rules.'" *Id.* (quoting *Foman*). "'[P]rejudice to the non-moving party is the touchstone for the denial of an amendment.'" *Id.* at 1414 (quoting *Cornell & Co. v. Occupational Safety & Health Review Comm'n*, 573 F.2d 820, 823 (3d Cir. 1978)). "In the absence of substantial or undue prejudice, denial instead must be based on bad faith or dilatory motives, truly undue or unexplained delay, repeated failures to cure the deficiency by amendments previously allowed, or futility of amendment." *Id.* (citing *Heyl & Patterson Int'l, Inc. v. F.D. Rich Housing of the Virgin Islands, Inc.*, 663 F.2d 419, 425 (3d Cir. 1981), *cert. denied*, 455 U.S. 1018 (1982)).

 **B.** **Discussion**

 ATT requests leave to amend its first amended answer and counterclaims with information gained after its filing. ATT argues that Kentex was improperly selling "knock off" products using ATT's proprietary molds. Based on this belief,

ATT has proposed amending its answer to include new factual allegations and two additional claims: reverse passing off under the Lanham Act, 15 U.S.C. §1125(a), and common law unfair competition. Kentex argues that leave to amend should be denied on grounds of futility.

"'Futility means that the complaint, as amended, would fail to state a claim upon which relief could be granted. In assessing "futility," the District Court applies the same standard of legal sufficiency as applies under Rule 12(b)(6).'" *Holst v. Oxman*, 290 Fed. Appx. 508, 510 (3d Cir. 2008) (quoting *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000)). Thus, we must apply the standard of review appropriate for a Rule 12(b)(6) motion, as detailed above. For purposes of this motion, we look only to the possible futility of the two new counterclaims proposed by ATT. We begin with the claim of reverse passing off under the Lanham Act.

### i. Reverse Passing Off under the Lanham Act

Section 1125(a) of the Lanham Act provides for civil liability when

> [a]ny person … on or in connection with any goods or services … uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which
> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to

> the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities.

15 U.S.C. §1125(a). To establish a claim under the Lanham Act, a plaintiff must show "'1) the involvement of goods or services; 2) an effect on interstate commerce; 3) a false description or designation of origin with respect to the goods or service involved; and 4) a reasonable basis for the belief that one has been injured.'" *Allen-Myland, Inc. v. International Business Machines Corp.*, 746 F.Supp. 520, 553 (E.D. Pa. 1990) (quoting *Manufacturers Technologies, Inc. v. Cams, Inc.*, 706 F.Supp. 984, 1003 (D. Conn. 1989)).

ATT's proposed counterclaims clearly satisfy the first two elements, as the claims pertain to the interstate sale of planters in Georgia. With regard to the third element, ATT alleges that Kentex engaged in "reverse passing off." A defendant engages in reverse passing off "by selling or offering for sale another's product that has been modified slightly and then labeled with a different name." *Roho, Inc. v. Marquis*, 902 F.2d 356, 359 (5th Cir. 1990). Reverse passing off may also be accomplished "by 'remov[ing] or obliterate[ing] the original trademark, without authorization, before reselling the goods produced by someone else.'" *Id.* (quoting *Smith v. Montoro*, 648 F.2d 602, 605 (9th Cir. 1981)). "[E]very Circuit to consider

the issue found [15 U.S.C. §1125(a)] broad enough to encompass reverse passing off." *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 30 (2003).

ATT alleges that it provided or paid for proprietary molds to be used in manufacturing their custom-designed planters. (Doc. 29, Second Amended Counterclaims, ¶ 31). ATT further alleges that Kentex was not authorized to use the molds without ATT's consent. (*Id.* at ¶ 33). During a routine inspection, ATT employees identified planters for sale at an Old Time Pottery retail store in Georgia that were manufactured using ATT's molds. (*Id.* at ¶ 65). The underside of the planters had been modified to grind down marks that would identify the product as ATT's. (*Id.* at ¶ 70). On some of the planters sold at Old Time Pottery, the identifying marks were not completely ground down, revealing some remnants of ATT trademarks "Southern Patio" and "HDR." (*Id.* at ¶ 74). Assuming these factual allegations to be true, as we must, we find it plausible that Kentex engaged in reverse passing off by producing planters using ATT proprietary molds, attempting to obliterate their identifying marks, and then selling the planters to at least the Old Time Pottery store in Georgia.

Finally, we find it plausible that ATT has suffered injury if Kentex is selling "knock off" ATT planters. At this early stage, ATT has alleged sufficient facts to plausibly support a claim of reverse passing off under the Lanham Act and an amendment adding such a counterclaim would not be futile.

### ii. Common Law Unfair Competition

We turn now to ATT's proposed counterclaim for common law unfair competition. "The elements of an unfair competition claim under Pennsylvania common law are identical to those required under the Lanham Act, except that no showing regarding interstate commerce is necessary under Pennsylvania law." *Allen-Myland,* 746 F.Supp. at 553 (citing *Moore Push-Pin Co. v. Moore Business Forms, Inc.*, 678 F.Supp. 113, 116 (E.D. Pa. 1987)). For the same reasons stated above, we find that ATT has alleged sufficient facts to plausibly state a claim for common law unfair competition.

## IV. CONCLUSION

For the foregoing reasons, we find that ATT pled sufficient facts to plausibly support its amended counterclaims. In addition, we find that ATT's proposed amendments are not futile. Accordingly, we shall deny Kentex's Motion to Dismiss and grant ATT's Motion for Leave to Amend.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1. Plaintiff's Motion to Dismiss, (Doc. 21), is **DENIED.**

2. Defendant's Motion for Leave to Amend, (Doc. 27), is **GRANTED**.

3. Defendant shall refile its proposed Second Amended Answer, Affirmative Defenses, and Counterclaims, (Doc. 28), within **FIVE (5) BUSINESS DAYS** of this Order.

  <u>s/ John E. Jones III       </u>
John E. Jones III
United States District Judge